**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| SAMUEL MOSES,<br><br>Plaintiff,<br><br>v.<br><br>TENNESSEE DEPARTMENT OF CORRECTION, LOUDON COUNTY JUSTICE CENTER, MORGAN COUNTY CORRECTIONAL COMPLEX, MORGAN COUNTY SHERIFF'S OFFICE, LOUDON COUNTY SHERIFF'S OFFICE, TENNESSEE BOARD OF PAROLE, NASHVILLE TITLE IV DIVISION, BLEDSOE COUNTY CORRECTIONAL COMPLEX, and ARAMARK,<br><br>Defendants. | ) | No. 3:25-cv-575-TRM-DCP |

**MEMORANDUM & ORDER**

Plaintiff, a Tennessee Department of Correction ("TDOC") prisoner housed in the South Central Correctional Facility ("SCCF"), filed a pro se complaint for violation of 42 U.S.C. § 1983 regarding his current confinement and his previous confinements in the Morgan County Correctional Complex ("MCCX"), Bledsoe County Correctional Complex ("BCCX"), and the Loudon County Jail (Doc. 1), and a motion for leave to proceed *in forma pauperis* (Doc. 5). In his complaint, Plaintiff also requests appointment of counsel (*See*, *e.g.*, Doc. 1, at 1, 2). For the reasons set forth below, Plaintiff's motion for leave to proceed *in forma pauperis* (*Id.*) will be **GRANTED**, his requests for appointment of counsel will be **DENIED**, and this action will be **DISMISSED** because the complaint fails to state a claim upon which relief may be granted under § 1983.

## I. FILING FEE

It appears from Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 5) that he cannot pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion is **GRANTED**. Plaintiff is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee collection procedure, the Clerk is **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. COUNSEL

As set forth above, in his complaint, Plaintiff requests appointment of counsel (Doc. 1, at 1, 2). In support of these requests, Plaintiff states that he is isolated due to fear, has "PTSD," and "cannot remember who [he is] sometimes 2-3 times a day" (*id.*).

Appointment of counsel in a civil proceeding is not a constitutional right, but a privilege justified only in exceptional circumstances. *Lavado v. Keohane*, 992 F. 2d 601, 605–06 (6th Cir.

1993). A district court has discretion to determine whether to appoint counsel for an indigent plaintiff. *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992). In exercising that discretion, the district court should consider the nature of the case, whether the issues are legally or factually complex, and the plaintiff's ability to present his claims. *Lavado*, 992 F.2d at 605–06.

As to the first two factors, this action arises out of various incidents during Plaintiff's incarcerations in different facilities, all of which are typical prisoner claims that are not factually or legally complex. As to the third factor, while Plaintiff claims that he has PTSD and sometimes cannot remember who he is, many prisoner plaintiffs suffer from mental health issues, and it appears from his filings that Plaintiff can adequately present his claims.

Thus, Plaintiff has not established that this is an exceptional case in which he is entitled to appointment of counsel, and his requests for appointment of counsel are **DENIED**.

## III. COMPLAINT SCREENING

### A. Standard

District courts must screen prisoner complaints and dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim [at screening] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review, a prisoner complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief

"above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, pro se filers must abide by "basic pleading standards[,]" and "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (citation modified).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

**B. Allegations**

Plaintiff's complaint includes fourteen pages of single-spaced, handwritten allegations, many of which are general, dense, and repetitive. Moreover, it is apparent from the totality of the complaint that Plaintiff does not seek to hold any Defendant liable under § 1983 for many of his allegations but instead provides the information as background. Accordingly, for purposes of efficiency, the Court will only generally summarize various allegations in the complaint and finds that any allegation not specifically analyzed herein fails to state a plausible claim for violation of § 1983 against any Defendant. Also, as Plaintiff has sued many related Defendants and does not specify which allegations are against which Defendant, the Court will list groups of related Defendants and list all allegations that may be against that group of Defendants before screening the complaint to determine whether it states a plausible claim for relief against any Defendant.[1]

[1] The Court liberally construes a portion of the complaint to request that the Court allow Plaintiff up to forty-five days after he filed his complaint to amend/supplement his complaint due to his limited access to legal resources (*id.* at 4). The Court has abided this request by allowing Plaintiff more than forty-five to file any such amendment or supplement, but he has not done so, nor has he sought additional time to do so.

### 1. Loudon County Justice Center and Loudon County Sheriff's Office

The Loudon County Sheriff's Office "stripped [Plaintiff] of [his] character . . . by labeling [him] a predator and kidnapper of the weak," which "rendered [Plaintiff] unsafe in prison" and which Plaintiff categorizes as "defamation" (Doc. 1, at 1). Plaintiff also states that he is confined even though Loudon County Detectives knew that he tried to use "22.7 grams of meth" to negotiate with an informant who "lied to bring false charges," that this occurred in 2021, and that "the law didn't protect [Plaintiff] as it would have a governor or mayor" (*id.* at 1–2).

Plaintiff states that his medical claims go "as far back as [his] arrest in 2021 and include [L]oudon County[']s medical records" and claims that officers spread lies about him kidnapping and assaulting Stacey Hensley that could get him killed (*id.* at 2). He also seeks unspecified relief from the Loudon County Sheriff's Office for false reporting about his charges (*id.* at 3).

Additionally, according to Plaintiff, "Loudon police had a clandestine operative working not 70 yards from the elementary school front door at 503 Spring St . . . for more than 4 years" (*id.* at 5). Plaintiff also makes various allegations about facts related to charges against him in both Monroe County and Loudon County (*id.* at 5–6).

Plaintiff states that during his Loudon County confinement, he "endur[ed] day upon day of headaches and stomach pain and vomiting" and filed a habeas corpus asking for help (*id.* at 7). Also during this confinement, Plaintiff's "mail to the public was being withheld and thrown away and some placed in [his] property," and he did not receive "religious services" after he talked to "pastors about the clandestine operation at . . . Spring St" (*id.*). Additionally, Captain Jake Keener "ordered [Plaintiff] dragged down to the rec room and him and 4 or 5 officers crushed [the] left side of [Plaintiff's] face and stomped [his] right until [he] gave up [his]

engagement ring for [him] yelling to other inmates to make calls to family members and tell them about the beatings [he] was taking from officers" (*id.*). Plaintiff also claims that Captain Keener moved informants to all jail pods "so that his lies would be spread," which caused Plaintiff to "find trouble" in every pod (*id.*). Plaintiff was also called "kidnapper of cancer victim" during this time, and at least "20 men" also went to BCCX when Plaintiff did, which Plaintiff "feel[s] . . . was purposely done" (*id.*).

Plaintiff also provides facts about incidents underlying the convictions for which he is currently confined and implies that they correspond health issues he previously suffered, seemingly in the Loudon County Jail (*id.* at 10).

Plaintiff states that from his 2021 confinement in the Loudon County Jail to his prior confinement in MCCX, he was unable to send out legal mail, he was housed where wifi was not available, and there were restrictions causing inadequate chaplain services (*id.* at 12). Plaintiff also states that in both his Loudon County and MCCX confinements, he was denied access to the law library, as he only got to use the computer one time (*id.*).

### 2. Tennessee Department of Correction ("TDOC"), Morgan County Correctional Complex ("MCCX"), Bledsoe County Correctional Complex ("BCCX"), and Nashville Title IV Division

Plaintiff requests to "include [his] entire time in TDOC custody" in claims alleging "[h]ousing [c]ode [v]iolations, inadequate medical care, den[ial] of religious services, [and] Strong R manipulations" (*id.* at 2). He also claims that, while he was in MCCX, he suffered a heart attack due to high blood pressure, did not have access to an effective grievance procedure, and did not receive effective counseling (*id.*).

Plaintiff states that unspecified prison officials denied him protective custody in the MCCX and SCCF even though staff saw him in situations that caused "serious life threatening

injuries" and where he "barely escaped alive" (*id.* at 3). Plaintiff also claims that "[his] days could be numbered as the vicious allegations could be spread to this prison" and that "[he is] on the chopping block" at SCCF (*id.*).

Plaintiff states that he is receiving high-blood-pressure treatment after sending grievances to Nashville, and that he never received responses to his MCCX grievances (*id.* at 5). Plaintiff also claims that he "tested readings that were stroke level" in MCCX and BCCX, and that his heart attack could have been prevented if he had received "healthcare that [he] deserved" (*id.*). He also seems to indicate that he had to pay "unreasonable prices" for medical care (*id.*).

On June 25, 2025, Plaintiff was "deemed to require lisinopril . . . after several grievances, and he requests an internal affairs investigation into why he did not receive gallbladder treatment despite him reporting issues to staff from March 29, 2021 (*id.*). Plaintiff also states that (1) MCCX official Stacey Oaks took a photo of Plaintiff after a "beating" in which Plaintiff looks like he "should be dead," (2) he "pleaded for P.C. at MCCX and sent 4 pages explaining why [he] need[s] protection," and (3) Loudon County inmates are housed at SCCF (*id.* at 7).

Plaintiff further claims that he was "denied religious services at MCCX in the form of indigent mailing materials that [he] qualified for and [he] was approved by the Chaplain and they couldn't tell [him] why [he] wasn't receiving them because [their] office had approved [him]," for which he blames MCCX staff (*id.*). Plaintiff further claims that MCCX prisoners were "denied razors[,] [] . . . hot meals that had drinks or condiments[,] . . . [and] haircuts" (*id.* at 7–8). Plaintiff also states that two MCCX counselors returned him to general population even though he told them he "found knives hidden in [his] bottom box and was given a deadly amount of Fentanyl that [he] did not know about from an inmate," and he "had a 2 point security level" (*id.* at 8). Plaintiff speculates about events that could occur and states he has told the Department

of Justice and "Title IV" offices about those scenarios (*id.*). Plaintiff then states that MCCX staff moved "Jeremy Pass" to the top bunk above him even though Mr. Pass had just been caught with knives (*id.*). Within a month, Mr. Pass was "busted with 13 knives," after which Plaintiff was housed in a pod with "close inmates" who had "special over[r]ides or mediums waiting on annual reclass," which he states violates an unspecified "state regulation" (*id.*).

Plaintiff then states that he seeks an extension of the statute of limitations regarding some events because he has had "repeated violation of [his] right to receive full protection of the law" and a Detective in Sweetwater, Tennessee allowed an individual to have a large meth lab in 2005 (*id.* at 9). Plaintiff then describes a number of personal events, family issues, and issues related to his criminal charges and convictions, for which he provides dates of 2013 and 2021 (*id.* at 9–10).

Also, in a letter filed with his complaint, Plaintiff asks the Court to extend the statute of limitations for his claims against the TDOC and others based on his assertion that there have been stabbings in his facility, he was accepted in "RDAP," and he has limited computer time (*id.* at 11).

Plaintiff also claims that from his 2021 confinement in the Loudon County Jail to his prior confinement in MCCX, he was unable to send out legal mail and housed where wifi was not available, and there were restrictions that resulted in inadequate chaplain services (*id.* at 12). He further states that unspecified people "forced [him] into dangerous situations knowingly" (*id.*). Plaintiff also states that he did not receive razors, haircuts, or "drinks with [his] cold meals that were served in Styrofoam trays" in MCCX (*id.*). Plaintiff then claims that unspecified MCCX officials/counselors tried to "force [him] back on the triangle area," even though he had reported to staff that he had received "death promises" if he returned (*id.*).

Plaintiff also states that in both his Loudon County and MCCX confinements, he was denied access to the law library, as he only got to use the computer one time (*id.*).

### 3. Monroe County Sheriff's Office

Plaintiff seeks unspecified relief from the Monroe County Sheriff's Office for false reporting about charges against him and requests an internal affairs report in a criminal case against him (*id.* at 3). Plaintiff also makes various allegations about facts related to apparent charges against him in Monroe County and Loudon County (*id.* at 6).

### 4. Tennessee Board of Parole

Plaintiff asks to examine his parole records to determine why he was denied parole despite him completing his recommendations and having "a strong home plan and address" (*id.* at 3).

### 5. Aramark

Plaintiff states that Aramark fed him inadequate meals and he therefore lost 25 pounds during three months in MCCX's "prison hole" (*id.* at 12).

## C. Analysis

### 1. Demand for Relief

First, Rule 8(a)(3) of the Federal Rules of Civil Procedure requires a complaint to contain a demand for the relief sought. But Plaintiff's complaint does not contain any indication of what relief he seeks for his claims therein. As such, it does not comply with Rule 8(a)(3). Regardless, the Court will not allow Plaintiff to amend his complaint to include such a demand, as, for the reasons set forth below, (1) many claims in the complaint are time-barred, and (2) the complaint also fails to state a plausible claim for relief under § 1983 as to any Defendant.

### 2. Statute of Limitations

It is also apparent from the face of the complaint that many of the claims therein, including but not limited to Plaintiff's claims arising out of his 2021 confinement in the Loudon County Jail, are untimely, as they occurred more than a year prior to Plaintiff filing the instant action.

Specifically, district courts apply state statutes of limitations to § 1983 claims. *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005). Tennessee applies a one-year statute of limitations to § 1983 actions. *Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012); Tenn. Code Ann. § 28-3-104(a)(3).

Federal law governs when the statute of limitations begins to run. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citations omitted). The Sixth Circuit has stated that, in determining when the statute of limitations begins to run, courts look to "what event should have alerted the typical lay person to protect his or her rights." *Dibrell v. Rex*, No. 25-5334, 2025 WL 3285587, at *3 (6th Cir. Nov. 25, 2025) (citing *Beaver St. Invs., LLC v. Summit County*, 65 F.4th 822, 826 (6th Cir. 2023)).

A court may equitably toll the statute of limitations where a plaintiff demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). But equitable tolling generally "applies only when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000). As such, "[a]bsent compelling equitable considerations, a court should not extend limitations by even a single day." *Id.* at 561.

Moreover, it is appropriate for a district court to dismiss claims that are time-barred at screening. *Norman v. Granson*, No. 18-4232, 2020 WL 3240900, at *2 (6th Cir. Mar. 25, 2020) (affirming district court's dismissal of time-barred claims at screening); *Watson v. Wayne Cnty.*, 90 F. App'x 814, 815 (6th Cir. 2004) (affirming district court's dismissal of claims as time barred at screening and stating that, "[i]f a statute of limitations defense clearly appears on the face of a pleading, the district court can raise the issue *sua sponte*") (citation omitted); *Castillo v. Grogan,* 52 F. App'x 750, 751 (6th Cir. 2002) ("When a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint as frivolous is appropriate" (citation omitted)).

While Plaintiff does not provide the date on which many events in his complaint occurred, it is apparent from the complaint that many of his claims occurred more than a year before the date on which he filed his complaint, including but not limited to the claims arising out of his 2021 Loudon County confinement. Moreover, all the claims in the complaint arise out of events that would have alerted a normal person to protect his rights. Additionally, while Plaintiff requests in his complaint that the Court extend the statute of limitations (*id.* at 9, 11), he only presents general facts about his prison life to support these requests, and these facts do not demonstrate that any extraordinary circumstances entitle Plaintiff to equitable tolling.

Accordingly, it is apparent from the face of the complaint that many of Plaintiff's claims are time-barred, and he has not demonstrated that he is entitled to equitable tolling for any claim. Nevertheless, given the lack of specific dates in the complaint, the Court will also address why Plaintiff's complaint fails to state a plausible claim for violation of § 1983 as to any Defendant.

### 3. Entity Claims

Plaintiff has sued numerous entities, three of which are associated with municipalities (the Monroe County Sheriff's Office, the Loudon County Justice Center, and the Loudon County Sheriff's Office ("County Defendants")), and four of which are associated with the State of Tennessee (the TDOC, MCCX, BCCX, and the TBOP ("State Defendants")). The Court will address Plaintiff's claims against all Defendants in turn based on their substance.

**a. County Defendants**

While Plaintiff has sued the Monroe County Sheriff's Office, the Loudon County Justice Center, and the Loudon County Sheriff's Office, these are not entities subject to suit under § 1983. *See Anciani v. Davidson Cnty. Sheriff Office*, No. 3:19-cv-169, 2019 WL 1002503, at *2 (M.D. Tenn. Feb. 28, 2019) ("It is well established that in Tennessee federal courts, a sheriff's office or police department is not a 'person' subject to suit under 42 U.S.C. §1983.") (citation omitted)); *see also Cage v. Kent County Corr. Facility*, No. 96-1167, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) (stating that "[t]he district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983").

Additionally, even if the Court could liberally construe Plaintiff's complaint as against Monroe County or Loudon County (which are entities subject to suit under § 1983 and the municipalities responsible for the Monroe County Sheriff's Office, Loudon County Justice Center, and the Loudon County Sheriff's Office, respectively), for the complaint to state a plausible claim for § 1983 relief against Monroe County or Loudon County, it must contain facts indicating that a custom or policy of this entity caused a violation of Plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978) (providing that a municipality may be liable under § 1983 only where its custom or policy caused a violation of the plaintiff's constitutional rights). Nothing in Plaintiff's complaint allows the Court to plausibly infer that

any custom or policy of Monroe County or Loudon County caused a violation of his constitutional rights.

Accordingly, the complaint fails to state a claim upon which relief may be granted under § 1983 as to the Loudon County Justice Center, the Loudon County Sheriff's Office, and the Monroe County Sheriff's Office, and it will not proceed against Loudon County or Monroe County.

**b. Nashville Title IV Division**

While Plaintiff has sued the "Nashville Title IV Division," the Court been able to locate any such entity. Also, to the extent that Plaintiff meant to sue Nashville's Title VI program, https://www.nashville.gov/departments/human-relations/title-vi (last visited Aug. 11, 2026), he does not make any allegations against this entity from which this Court can plausibly infer that it may be liable under § 1983 for any violation of Plaintiff's constitutional rights.

**c. State Defendants**

As set forth above, Plaintiff has also sued the TDOC, MCCX, BCCX, and TBOP. But none of these entities are subject to suit under § 1983. *See Anderson v. Morgan Cnty. Corr. Complex*, No. 15-6344, 2016 WL 9402910, *1 (6th Cir. Sept. 21, 2016) (finding that a state prison is not a person that may be liable under § 1983); *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding that the TDOC is not a "person" within meaning of 1983); *Page v. Tennessee Bd. of Parole & Pardons*, No. 3:25-CV-01350, 2026 WL 209975, at *4 (M.D. Tenn. Jan. 27, 2026) (providing that "neither the TDOC nor the Board of Parole are suable entities in a § 1983 suit") (quoting *Scott v. Tennessee Bd. of Parole*, No. 1:22-CV-259-TAV-SKL, 2022 WL 16953627, at *2 (E.D. Tenn. Nov. 15, 2022)). And notably, the State of

Tennessee also is not subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) (providing that "a State is not a person within the meaning of § 1983").

Moreover, out of an abundance of caution, the Court additionally notes that Plaintiff's allegations against the State Defendants fail to state a plausible claim for violation of § 1983.

Specifically, while Plaintiff states that he did not receive responses to his MCCX grievances and the MCCX grievance procedure was ineffective, this does not rise to the level of a constitutional violation. *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (providing that a prisoner has "no inherent constitutional right to an effective prison grievance procedure").

Additionally, while Plaintiff makes a request to see his parole records so that he can see why he was denied parole, nothing in the complaint indicates that the denial of parole to Plaintiff may have violated his constitutional rights, especially as the Sixth Circuit has held that Tennessee's parole statutory scheme "does not confer a protected liberty interest on inmates" because it "permits parole but does not mandate it," and that "inmates in Tennessee [therefore] do not have a constitutionally recognized expectation of receiving parole because the statutory scheme does not sufficiently constrain the Board's discretion to deny parole." *Thomas v. Montgomery*, 140 F.4th 335, 341–43 (6th Cir. June 9, 2025) (quoting and citing Tenn. Code Ann §§ 40-28-117(a) and 40-35-503(b) and quoting Tenn. Comp. R. & Regs. 1100-01-01-.07(4)).

Moreover, Plaintiff's allegations regarding inadequate medical care in MCCX are conclusory and do not allow the Court to plausibly infer that any such occurrence was due to deliberate indifference, rather than medical negligence, which is not actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976)) (providing that only "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain" that

violates the Eighth Amendment, and that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner.") (citation modified); *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994) (providing that the subjective prong of a deliberate indifference claim requires a plaintiff to show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Also, Plaintiff's allegation that he was charged for medical care does not allege a constitutional violation. *See Bailey v. Carter*, 15 F. App'x 245, 2001 WL 845446 (6th Cir. July 20, 2001) (holding policy requiring payment for medical services, where funds are available, does not violate an inmate's constitutional rights).

Plaintiff also makes general statements indicating that MCCX officials failed to protect him from threats of harm and specifically alleges that unspecified MCCX officials (1) did not place him in protective custody even after seeing Plaintiff incur injuries in the prison and (2) attempted to place Plaintiff back in "the triangle" even after he told them of threats against him in that placement. But even liberally construing these statements in Plaintiff's favor, he has not set forth specific facts from which the Court can plausibly infer that he suffered any harm in his prior MCCX confinement due to any prison official's failure to protect him from a known risk of serious harm, as required to state a plausible claim for relief based on these allegations. *Branham v. Grinage*, 869 F.2d 1488, 1989 WL 11070 (6th Cir. 1989) (Where a plaintiff "fail[s] to state that he actually suffered any harm from the alleged failure to protect him[,]" dismissal of the claim is appropriate because "[a] § 1983 claim only occurs when the threats or threatened

conduct results in a constitutional deprivation" (citing *Macko v. Byron*, 760 F.2d 95, 97 (6th Cir. 1985))).

Similarly, while Plaintiff attempts to allege § 1983 claims arising out of the conditions of his MCCX confinement, he provides no facts about those conditions from which the Court could find that they created an "extreme deprivation[]" that denied him "the minimal civilized measure of life's necessities," such that they could rise to the level of constitutional violation. *Hudson v. McMillan*, 503 U.S. 1, 8–9 (1992) (citation modified).

Moreover, Plaintiff's conclusory allegations of "inadequate chaplain services" and denial of religious mailings do not allow the Court to plausibly infer any violation of his constitutional rights. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Additionally, while Plaintiff alleged he was denied access to legal resources and was unable to send legal mail while in the MCCX, he does not set forth any facts from which the Court can plausibly infer that these incidents caused prejudice to a meritorious claim or otherwise violated his constitutional rights, and these allegations therefore do not plausibly allege a constitutional violation. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (holding that a plaintiff must plead that his meritorious claim was prejudiced by the alleged denial of adequate legal resources to state a claim for denial of access to courts) (citation omitted); *Stanley v. Vining*, 602 F. 3d 767, 770 (6th Cir. 2010) (citing *Wardell v. Duncan,* 470 F.3d 954, 959 (10th Cir. 2006) ("A plaintiff must show that non-delivery of his legal mail resulted in actual injury by frustrating, impeding, or hindering his efforts to pursue a legal claim.") (citation modified)).

Accordingly, the complaint fails to state a plausible claim for relief against any of the State Defendants**.** But as Plaintiff indicates in his complaint that he feels that the current conditions of his confinement in the SCCF may be violating his constitutional rights, the Clerk will be **DIRECTED** to send Plaintiff a § 1983 complaint form that he may use to bring such claims.

**d. Aramark**

While Plaintiff has also sued Defendant Aramark, he alleges only that this entity did not provide him sufficient quantities of food, and he therefore lost twenty-five pounds during a three-month confinement in MCCX's "prison hole" (*id.* at 12). However, the complaint does not contain any facts from which the Court can plausibly infer that the alleged lack of sufficient food was due to a custom or policy of Defendant Aramark, rather than actions of prison staff or employees, as required to state a plausible claim for violation of § 1983 regarding this entity. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (holding a plaintiff must allege "a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights). Moreover, Plaintiff's conclusory allegation of inadequate food portions does not allow the Court to plausibly infer any violation of Plaintiff's constitutional rights. *Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977) (providing that where a prisoner's diet is sufficient to sustain the prisoner's good health, no constitutional right has been violated); *see also Adams v. Hardin Cnty. Det. Center*, No. 3:16-CV-P29-CRS, 2016 WL 2858911, at *6 (W.D. Ky. May 12, 2016) (noting that "[c]ourts have generally held that allegations of weight loss alone fall short of stating an Eighth Amendment claim" and citing numerous cases) (citations omitted).

## IV. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 5) is **GRANTED**;

2. Plaintiff's requests for appointment of counsel are **DENIED**;

3. Even liberally construing the complaint in Plaintiff's favor, it fails to state a claim upon which relief may be granted under § 1983;

4. Accordingly, this action will be **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A;

5. The Clerk is **DIRECTED** to send Plaintiff a form § 1983 complaint; and

8. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED. AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**/s/ *Travis R. McDonough***
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**